Good morning, Your Honors. My name is Jeffrey Robbins for the government. I'd like to reserve five minutes for rebuttal. Your Honors, this case is about the government's exercise of prosecutorial discretion, knowing that the named plaintiffs in this matter were DACA recipients engaged in alleged criminal activity, to issue notices to appear, placing them in childhood arrivals, which USCIS then later acknowledged by issuing notices of action. This court should reverse the district court's grant of preliminary injunction. The district court here failed to follow the relevant Supreme Court and circuit precedent regarding similar acts of prosecutorial discretion in the immigration context. This court should reverse the district court's preliminary injunction for two key reasons. First, the district court lacked jurisdiction over the termination of plaintiff's DACA as a result of their placement into removal proceedings. And second, the district court erred in finding that plaintiffs had a likelihood of success to state a claim under the Administrative Procedure Act. Counsel, let me just jump in real quick. The Supreme Court, I understand, is considering the Fourth Circuit's recent decision on DACA and the Ninth Circuit's decision on DACA, which two of us are pretty familiar with. Assuming, let's assume the Supreme Court on those two cases, what should we do as a court if that happens in this case? Your Honor, the government's arguments here do not specifically rely on an argument that DACA is unlawful with regard to termination. That's not the question. The question is jurisdiction. Because the DACA, at least the Ninth Circuit decision in DACA, finds jurisdiction and rejects a number of the government's arguments that are quite similar to the arguments the government is making in this case to the effect that we lack jurisdiction. So I would assume that if the Supreme Court grants cert on at least the Regent's case, that it will be looking at the question, likely the very same questions of jurisdiction that you've raised here. Yes, Your Honor. And if granted cert, that very well may resolve some of these issues on jurisdiction. And it might be that... If you don't have jurisdiction, then the merits don't matter. Correct, Your Honor. But on the question of... And it may be appropriate to hold this matter to see what happens... That's the question. Yes, Your Honor. Depending on what happens as a result of today's conference, the government will file an update with the court with regard to our position, as may be. That would be appreciated. Yes, Your Honor. But with regard to jurisdiction and to address the interrelationship of Regents and the matter here, and the application of both 1252G and B9 of 8 U.S.C., there is a distinction here. And the court, the panel, and Regents found that 1252G did not apply to bar jurisdiction over the claims of the plaintiffs there with regard to the decision to rescind DACA as a policy, because it didn't involve the individual exercise of discretion with regard to deferred action. That is different here, because here we have named plaintiffs who were placed into removal proceedings, issued notices to appear, that had the effect of terminating their DACA. And so the panel, even in Regents, acknowledged that in individual exercises of that discretion with regard to deferred action, that 1252G could apply. Right. But I don't think this is – this, like the Regents case, this is a challenge to a policy decision to issue NTAs upon learning of any kind of possible criminal activity. So it's the policy, like the policy in Regents, that is being challenged here. And it's being brought as a class action challenge to that programmatic change, which they argue is inconsistent with your own regulations. And I acknowledge that is how plaintiffs frame their action and have framed their action. But the government doesn't believe that to be the case, that where their claim under the APA is challenging the specific action of terminating DACA on behalf of a class, but as that is applied in individual cases, that that is different than that same kind of program. Can the named plaintiffs here raise the challenge that they've brought to this Court in their removal proceedings? No, not directly. It's irrelevant to their removal proceedings, isn't it? It is not irrelevant to their removal proceedings. It is not irrelevant? It is not irrelevant to their removal proceedings. So how does DACA affect the legality of their removal proceedings? DACA is a form of deferred action. It is a decision to defer pursuing removal proceedings against an individual. So a taking DACA away from an individual is a decision to pursue, or in this case, specifically. I think the real issue may not be DACA status so much as it is the EAD status. So when you terminate a DACA, it automatically terminated their EAD status, doesn't it? Their privilege to work. No, Your Honor. The placement of the individual's into removal proceedings, the issuance of the NTA, terminates the EAD. It's automatic in the same way that it terminates DACA. It terminates both DACA and EAD. Is that correct? Although the function is different, the EAD question is a regulatory function that the government argues that the government has complied precisely with the regulation in terminating employment authorization in these cases. And therefore, at least on the employment authorization issue, regardless of the question of jurisdiction, that plaintiffs – that the district court erred in finding a likelihood of success because the plain language of that regulation mandates the termination of employment authorization in that context. If what? If a notice to appear is issued. Okay. And that regulation is what? That's 8 U.S.C. 274A – That would be 8 C.F.R.? 8 C.F.R., yes, Your Honor. 274A.12. And, Your Honor, I will just need to confirm the precise – So filing of an NTA terminates the EAD status, the EAD privilege? Yes. Plaintiffs argue that the language of that regulation allows for an individual who is in removal proceedings to also receive employment authorization, and that is true. However, their argument is that an individual is entitled to continue to receive employment authorization once they are placed into removal proceedings, and that, the government argues, is not the proper reading of that regulation. Because of that regulation? Because the SOPs seem to contemplate that we don't terminate – automatically terminate a DACA and EAD unless you're in a special class. That would be EPS status. Not precisely, Your Honor. So the SOP does address a number of instances in which DACA may be terminated. Now, the government's position in the district court and on appeal is that those aren't the exclusive means of terminating DACA, and that the SOP specifically relates to the conduct of U.S. citizenship and immigration services. And with regard to the – just to step back briefly to the jurisdictional arguments in following this circuit's ruling in Romero de Silva, that that guidance isn't necessarily binding on the agency's ultimate exercise of discretion, which we argue here arose out of the issuance of a notice to appear. The specific termination provisions in the SOP are essentially threefold, I would say, Your Honor. First, the language of the SOP – this is at page 189 of the excerpts of record – talks about terminating DACA with a notice of intent to terminate in the case of an individual who no longer meets the guidelines that USCIS uses to determine whether to exercise their discretion ultimately to grant DACA or not. Plaintiffs cite that provision as mandating a notice of intent to terminate process in all cases of termination. But the two additional provisions for termination that are discussed in this matter are, one, Your Honor, the EPS – the egregious public safety grounds – that refers to the process by which, if USCIS discovers acts they believe to meet those criteria, how they then refer those to ICE, and if ICE issues a notice to appear, that that has the effect of automatically terminating DACA. The final procedure is – and it's on the next page of the record, Your Honor – is the enforcement priority procedure for termination. And that requires USCIS to confer on the – with Immigration and Customs Enforcement – with regard to the question of termination and does two things. It creates a number of procedures with regard to what happens if an NTA is issued. Again, that would result in the automatic termination of DACA. But also, even if an NTA is not issued, nothing in that specific provision requires that USCIS provide notice and an opportunity to respond to DACA termination. And I would point the Court – it's Appendix 1 to that SOP – that specifically lays out – and it's, I believe, Notice 602, Your Honors – a notice of action or notice of termination that CIS, when coming up with the standard operating procedure, specifically identified that they had situations – Are you talking about a notice of intent to terminate? No, just a notice of termination. That is in the template I, Your Honor. And so that contemplates – that CIS didn't always contemplate that they would terminate DACA with a notice of intent to terminate. And so that goes to the merits of the APA claim, Your Honor, that this guidance that termination by NTA is fully consistent with the DACA SOP. Okay. So I'm a little confused. So I'm looking at the – at page 189. And as I'm looking at that – at the language there, that if you're deemed to be EPS, then there is – then the issuance of the NTA will result in the termination of DACA. Okay? That's what – that's – I just quoted from that, from that first paragraph. But if ICE does not accept the case, or if the disqualifying criminal offense is non-EPS, then the team should reopen the case on motion and issue a notice of intent to terminate, and the individual is allowed 33 days to respond. Yes, Your Honor. I acknowledge that. That refers to disqualifying criminal offenses. So as it relates to the – what some refer to as the eligibility guidelines for DACA, and the government does contend that they rise to that level, but the grounds that USAID set for someone who should not receive DACA at all, that refers – that provision refers to those disqualifying criminal offenses. The government acknowledges that the acts that the named plaintiffs and perhaps others were involved in here are not, in and of themselves, disqualifying criminal offenses. Rather, the criminal conduct has given rise to a question about whether discretion should be continued in their cases to defer action or to pursue removal proceedings. Right. And I understand – my understanding of the plaintiffs is that they – of the plaintiffs' position is that they are not challenging the government's right to issue the NTA and to put the named plaintiffs into removal proceedings. I think they were quite explicit about that in their brief. The only question is whether the issuance of the NTA automatically terminates DACA and EAD status. Yes, Your Honor. And my reading of the SOP is that the government said that it would not. It doesn't – it doesn't prohibit you from going ahead and deciding on a case-by-case basis to issue an NTA, but it just means that the issuance of the NTA does not automatically terminate DACA. And that's the way that I read that page 189. So what have I misread here? What you've misread, Your Honor, is the application of that second paragraph to cases like these. So that is limited to the context of individuals where, first, you have a referral. So there's probably two or three reasons why I would disagree with Your Honor's reading. First, where you have this language for EPS grounds, where USCIS discovers them and refers them to ICE. What we have in this case, the facts on the record are different. The facts on our record showcases where ICE or Customs and Border Protection discovered the conduct and decided to issue an NTA. So it's not a situation where this chapter is applicable, where USCIS first discovers that conduct. So in this case, you are relying on ICE agents rather than USCIS to make the determination as to whether someone should be, lose their DACA status? Yes. And that is wholly consistent, Your Honor, with the 2012 Napolitano memo. How can that be? It's supposed to be USCIS who makes that determination. No, Your Honor. It is a shared responsibility. It is a shared exercise of enforcement discretion between the sub-agencies of the Department of Homeland Security. That being Customs and USCIS. And that's precisely what the 2012 Napolitano memo acknowledges. And if USCIS makes the decision, they get 33 days. But if the ICE agent on the ground makes the decision, they don't get 33 days? No, Your Honor. Because there are situations where if USCIS makes the decision, such as the enforcement priority ground, which the district court misread and plaintiffs misread, that an individual is not necessarily... Has that already been decided when they receive DACA? No, Your Honor. When an individual receives DACA at the time they receive DACA, the Napolitano memo and the guidance provides that they are deemed to be a low priority. But the enforcement priority ground for termination provides that individuals may become or be recognized as enforcement priorities after the receipt of DACA. And Your Honor, if we're going to... If it's not EPS, then they're disqualified. But if it's not EPS, they get 33 days to contest this, you're saying, unless it was an ICE agent that issued the NTA. Or a CBP agent, or... You're describing your current policy. Or they are... Wait. You're describing this new policy, rather. The government does not contend that this is a new policy. This policy has been in existence before the implementation of DACA, as to when an individual might lose their deferred action. A new policy as to following, since DACA. It's a new policy layered on to DACA. No, Your Honor. That is not our understanding here. But before DACA, how could you have this policy as to DACA residents? It was... Status, I mean. It was a policy as to deferred action, Your Honor, of which DACA is a form of. So there is a distinction as it applies to DACA. I'm sorry. I've written... I mean, I know a lot about deferred action. This sounds new to me. I'm just... Understood, Your Honor. But I just want to specifically address the point about the termination process at page 190. Because Your Honor's question is, if it's not EPS and it's not ICE, is there no other process? And... No, no. That's not my question at all. Yes, Your Honor. My question is, isn't it supposed to be the USCIS decision as to whether the disqualifying criminal offense should eliminate them from continuing their DACA and employment status? And not in all... And the new policy is that the decision is now shifted to the ICE agent on the ground who's making the decision to issue the NTA. No, Your Honor. And certainly not in all cases. The termination... Okay. You qualified that. Not in all cases. And I'm trying to get briefly, Your Honor, to the procedure at page 190 with regard to enforcement priorities, which refers to situations in its title that says DACA not automatically terminated. But that's the title. But within the text of that provision, it specifically references Appendix 1 and talks about a process whereby DACA may still be automatically terminated. And so that is... That's the notice of intent, which gives you the 33 days, right, to contest the notice of intent. No, Your Honor. Okay. Do you want to save time for rebuttal? Yes. Thank you, Your Honor. Okay. I won't take up any more of your time on this then. Before you sit down, counsel, I have to say that I really don't understand your argument matched up against the regulations that I read. I mean, it just... I was very confused after I read your brief, and I'm very confused after the argument. So anything that you can do to help bring us out of these clouds would be appreciated here. But I don't understand how the process that you described matches up against the SOPs. Absolutely, Your Honor. Thank you. Good morning, Your Honors, and may it please the Court. My name is Katrina Island, and I represent the plaintiffs' appellees in this case. As you've heard, plaintiffs and class members in the certified class are young immigrants who came to this country as children and were granted DACA, which permitted them to live and work, obtain a social security number, and pursue educational opportunities in this case. And the claims in this case, as you understand, are quite narrow. And what they do is they challenge USCIS's decision to arbitrarily and suddenly strip them of DACA without following the mandatory procedures in the SOPs, which require notice of intent to terminate, an explanation of the grounds that are the basis for termination, and to allow 33 days to respond. And there it makes clear that only if the individual fails to respond or if the response doesn't overcome the stated grounds, is USCIS to terminate DACA in those circumstances. And as Judge Bybee was pointing to, the SOPs are very clear that there's only one circumstance in the SOP in which a notice to appear issuance can serve as a categorical automatic termination of DACA, and that is in the case of an egregious public safety situation that is not at issue in this case. And I think it merits— Counsel, what do your clients get out of DACA? So once they've been put into removal proceedings, which you're not challenging the right of the government to put your named plaintiffs into removal proceedings. Am I correct on that? That's correct, Your Honor. Okay. So what does DACA give them at that point? I understand what they get out of the EAD, which is the right to continue working even while they're in removal proceedings, which seems to be very important. But what do they get out of DACA? Well, what's really important in this case is the meaningful process that the injunction provides. And what they get out of that is an opportunity to explain the circumstances—there may have been incorrect information that the agency had before it—and to really allow them to understand— That proceeding goes to USCIS, is that correct? Correct, Your Honor. Okay. But once they're put into removal proceedings, that's now before a different agency. That's correct. But USCIS still has jurisdiction under the DACA rules to determine whether an individual is eligible for DACA and merits DACA. And that can continue to happen on separate tracks, even though someone's in removal proceedings. So can USCIS decide that you're entitled to continue in your DACA status and an IJ decide that you're completely removable? Maybe I'll take a step back there. That's a very good question and something I want to address. What DACA does is it allows USCIS to make the determination that this person should continue to have DACA. And after giving notice and a chance to respond in the class members' cases here, USCIS in many cases did decide that they should continue to have DACA and didn't terminate it. So there are some people that have DACA and are in removal proceedings at the same time. And that's the way the program is structured. Can they cite their DACA status to the IJ? No, Your Honor. In fact, the government's position in this case and generally is that having DACA status does not impact the removal proceedings in the sense that they remain ongoing. There's no requirement that just because someone has DACA that the immigration judge would terminate the proceedings. What does DACA give them if they're currently in removal proceedings before an IJ? It also allows them to continue to be considered lawfully present. It also, you know, they get a social security number under the program. And it also allows them to have the opportunity to show USCIS that whatever, you know, having had their DACA terminated automatically, you know, under the circumstances of the case was unfair. And USCIS has an obligation under the SOPs to go through in a way looking at the grounds cited in the NTA and whether that is actually something that affects prosecutorial discretion. I guess what I'm, so if the USCIS decides that DACA, this person, whatever they did that caused the NTA to issue was not, did not rise to the level where their DACA status should be terminated or the NTA was issued by mistake, which apparently has occurred. And they decide that. Could that DACA recipient be removed? That's, the government's position is that, is that they can. That even notwithstanding the fact that someone has DACA, that they remain removable at any time. It doesn't affect their removal proceedings in any way. And they, it doesn't affect the government's ability to execute a removal order. And, you know, as a practical matter, in many cases the government chooses not to. If USCIS has decided that somebody should continue to have DACA, but the government's... You don't have to litigate whether there were actually grounds for removal. It doesn't, having DACA doesn't litigate whether there are grounds for removal. That remains unaffected. The, having DACA doesn't impact the validity of a removal order. Someone may have a removal order ultimately and still have DACA. In fact, there are many DACA recipients who have final orders of removal and have DACA at the same time. And the rules contemplate that. It says both in the DACA memo and in the standard operating procedures, that notwithstanding the fact that someone is in removal proceedings, maybe has a reinstated order of removal, and even already has a removal order, that in all of those cases an individual can continue to have DACA. They're on independent, separate tracks, removal proceedings and DACA. But if we, but if the government decides to go ahead and enforce the removal order, then the DACA obviously is irrelevant, right? That's correct, Your Honor. So tell me about the EAD. So that's a slightly different track from DACA and getting DACA doesn't automatically entitle you to an EAD. Am I correct on that? It doesn't entitle you to an EAD, that's correct. But it does, all DACA recipients are, or applicants for DACA are required to apply for an EAD at the same time. It is part of the application package and they won't accept one without the other. And if you're accused of an EPS and get put into removal proceedings, that automatically terminates both DACA and EAD, is that correct? Under the rules, that's correct. Okay. So I understood the government to be saying that if you were given an NTA, you're not an EPS. Okay, I realize there's a lot of acronyms going on here. But if you're not an EPS but you're given an NTA, that would be your clients, that they are required by regulation automatically to terminate your EAD. And that was 8 CFR 274A, is that 12 or 14? 14, A14. And that's correct, Your Honor, that that's the government's position. We addressed this in our brief, one of the final sections of the brief. And our position is that this regulation does not control and does not lead to that circumstance in this particular case. And that would be because of 14A1II? That's correct. Because the 274A.12C is a reference to DACA deferred action. Correct. Under 274A.12C, the DACA employment authorization documents are under that section. So essentially, this creates an exception for employment authorizations that are appropriate. And in this case, the DACA rules, the SOPs make clear that the way that DACA and EADs are terminated is through the process with opposing counsel, where an individual, after getting notice and a chance to respond, if it's terminated in that case, the EAD is also terminated for cause. If Your Honors don't have any more questions about that, I just wanted to go through a few other points to make clear on the merits. On page 189 of the termination section, it's very clear that that section applies any time an issue of criminality arises and that that is the procedure that the agency is to follow in those circumstances. And there it makes clear specifically that the notice to appear under an EPS situation is the only situation in which a notice to appear can be treated by actually canceling DACA. And these are comprehensive procedures that are binding on the agency, that it promulgated hundreds of pages of these very detailed procedures. And if it were the case that the NTA always automatically terminated DACA, there would be no need for the agency to include this specific SOP provision detailing this very narrow circumstance in which that's the case. And I also just wanted to point out that on page 190, that it's really clear in that circumstance that that section is irrelevant to the government's arguments. It makes clear that that's a situation involving a case where there is not a notice to appear issued. It says very clearly where a notice to appear is not issued. And so we think the controlling law on this is in the SOPs, in the criminal and national security and public safety grounds, and it makes very clear that under the circumstances of this case, this very narrow class, where these individuals are not subject to egregious public safety grounds, and in these cases, many cases have very minor allegations of criminal conduct, that this is the section that controls how their DACA is to be terminated. Your Honors, at the beginning of this, the SOP, there is a section that makes very clear that these are binding on all personnel who are involved in the adjudication of DACA, in the purpose and applicability section, which is on SER 10. Sorry, my apologies, SER 11. And there it makes clear that these are all binding that are to be followed when adjudicating DACA requests. And down at the bottom, it says that all personnel performing duties related to DACA processing will be similarly bound by the provisions of this SOP. That doesn't necessarily tell you that CPB and ICE are bound by that, that they're not people who are processing DACA requests. Well, I have two responses to that. I think that's correct generally, yes, Your Honor, that USCIS is supposed to be the agency that is adjudicating these and that USCIS is being given that authority to create a process and procedures for these applications. But I do also want to note that it says all personnel who, when they are adjudicating cases, are bound by this. So to the extent that the government's arguing that ICE is making the decisions, they might be bound. But I think my third response to that is that it doesn't really matter for purposes of this case. It's irrelevant to our because here we're not challenging the ability to issue an NTA. They can engage in that activity is unconstrained by the district court's injunction. And so sort of what the sort of applicability of these to ICE and CBP is sort of beside the point. I think that's a better position. Should have started with that one. It seems to me that your central point is that USCIS is the agency, is the section that is charged with enforcing DACA. These regulations govern how they administer DACA. And the question as to what ICE does, what CBP does, only tells us, how do we interact when we decide how to proceed with DACA? And that's why many of the arguments about jurisdiction are largely irrelevant because DACA has no impact on the IJ proceedings, on the removal proceedings. We agree with that position, Your Honor. And I realize I only have about seven minutes left and I wondered whether the court had any additional questions about the merits of our claims. We have, I'm happy to address jurisdiction as well. Let me ask the question I asked opposing counsel. The Regent's case is before the Supreme Court right now. If the court announces a grand certiorari on Monday, what do we do in this case? Your Honor, our position is that, you know, that that case wouldn't necessarily control here and that there are ways in this case where we have the DACA SOPs and DACA memo that provide clear law to apply here. But in any event, if the court were inclined to hold the case for, you know, to await the outcome of that decision, I think, you know, that would be appropriate. So I would think you have the preliminary injunction, right? So keep things the way they are for right now. That's good for you guys. That's correct, Your Honor. The relief is in place and is, you know, providing the protections. I did want you to speak to the Cheney issue because I probably read what I wrote the last time and so I do have concerns about that. Why don't you take some time and talk about that? Yes, Your Honor. So I think the question here is really about, the question turns on whether there's law to apply, whether there's a meaningful standard against which the agency can judge the conduct that's being challenged in this case. And I want to point out that here plaintiffs are not challenging the ultimate discretion in this case. USCIS is permitted to and has authority to terminate after going through the required process. And so it's really important to look specifically at what is being challenged. It's a nondiscretionary legal obligation that the agency has that we're challenging, not its discretion. So that's the first point that I would make. And second, on that particular question of whether the agency has the authority to take these actions, that is governed by clear law to apply. And this court in several cases, in ASSC, in Pinnacle Armor, in Mendez Gutierrez, has said that that law to apply can come apart from the statute, can come from sub-regulatory guidance, can come from things like agency memos. So, you know, there's guidance that... There's got to be internal guidance all the time that goes on with the government. So if you haven't... If I were a U.S. attorney and I issued a memo that said, don't charge marijuana violation under federal marijuana laws for anybody who's got more than... unless you've got more than four ounces. And I create a one-page little memo for my AUSAs and it gets posted by the water cooler. Can somebody take this and use this against us and to say, you violated... You charged somebody who only had three ounces. I think that would be a very different case, Your Honor, and I think there are a few points of distinction here. I think, you know, one here, back to your question sort of bringing these two together, is that, you know, Heckler was especially and particularly concerned with decisions not to enforce. And that's because, in those circumstances, the agency hasn't taken any action. And in that particular circumstance, there's no focus for judicial review. And that was the concern animating the... animating Heckler. And I think also, in your hypothetical, Judge Bybee, that would involve an actual substantive decision and reviewing the substantive decision whether to actually take the action at the end of the day. And then I think the last point I would make about that is that these rules are of a very different kind than what you've described. There are very detailed procedures that govern every single aspect of the program from what convictions are considered to be disqualifying, how you determine whether they're disqualifying, what, you know, how you weigh particular kinds of evidence. This is a very different kind of guidance. These were not published under the APA. Not required to, because the agency said these are internal procedures and policies. On the other hand, and in both the Napolitano memo and the subsequent memos, the Johnson and Kelly memos, are all very careful to say we're not creating any rights as we do this. So doesn't that cut a little bit against treating these as though they were federal regulations? Because that's the way that you're asking us to treat them, that they bind the agency as much as they were, as if they were published in the CFR. If I understand the question, maybe I'll just step back a little bit and talk about, you know, we aren't necessarily asking you to treat these as if they were promulgated. We don't think that in order for you to rule for us that these would have to be legislative rules that would have to go through notice and comment and be promulgated as regulations. That you can... the law to apply in these cases can come from sub-regulatory guidance, and they can be, you know, basically they provide a meaningful standard for review. So they don't need to go through notice and comment and be considered legislative rules to provide law to apply under the APA. And there are, you know, I think the Mataluna case makes clear this distinction. It discusses circumstances under which something might not reach the level of, you know, notice and comment rulemaking and trigger those procedural protections, but it nonetheless would provide law to apply that would allow the agency to review the agency's action in that case. I don't know if the court has other questions about jurisdiction. I'm happy to discuss them. I think, you know, the points that several of your honors made about the fact that, you know, this case does not challenge any commencement of proceedings. It doesn't challenge ICER CBP's authority to do that. It doesn't have impact on how the removal proceedings proceed. These are all, you know, critical, you know, points that show why 1252G and 1252B9, the two sections of the INA that the government cites, don't apply here. The Supreme Court in Jennings just recently reaffirmed what it said in AADC about the fact that the bar in that situation applies only to those three discrete actions themselves. And on B9, you know, this case is very... The claims here are separate and apart. You heard the government say that plaintiffs and class members could not bring these APA challenges in their removal proceedings. And, you know, Jennings just recently reaffirmed that we can't read a rising under so broadly as to create absurd results and to make claims effectively unreviewable in the end. And here, there's no claim that could be channeled through the PFR process. It's a channeling provision, not a jurisdiction-stripping provision under B9. And, you know, Jennings has made clear that where you have a situation where they're not challenging any part of their removal proceedings, how they proceed, and they're not challenging a removal order and there would be no effect on the removal order if plaintiffs prevail, then it's simply no bar to jurisdiction under 1252B9. All right, thank you very much, Counsel. Thank you very much. Thank you, Your Honors. In an attempt to address Judge Bybee's question that I left with, that being why shouldn't, as the government argues, the EPS termination provision apply here. And that is because what that contemplates is a scenario where USCIS is referring a matter to ICE to decide whether to issue an NTA or not. And that is not what we have here. Right, but the problem is, is that this says that if ICE goes to go... if you file an NTA, that the employment authorization automatically terminates. And it may not say anything. I think your argument is, well, this doesn't say anything if ICE just does this on its own. Okay? So what tells us that DACA status terminates automatically when ICE, independent of any consultation with USCIS, files an NTA? What tells us that is, first, the 2012 Napolitano memo, which gives ICE and CBP that authority. Okay. I've got the memo right here. Tell me what page. Your Honor, I'm sorry. I can't point to that specific reference. Well, I don't remember anything that tells us that it terminates automatically. I agree with that, Your Honor. Okay. So the Napolitano memo doesn't do that. Yes, Your Honor. The question is whether the SOP's control here to prevent ICE and CBP's conduct by issuing an NTA to have an effect, to have that effect. Well, that would be the choice by USCIS as to what effect to give it, right? No, Your Honor. USCIS is the one that controls the DACA status. Is that correct? Am I correct on that? Not precisely, Your Honor. Really? Okay. Because it is shared. And what this is, and I will say in the clearest way possible, and I apologize for the confusion in the government's position, Your Honor, but when ICE or CBP determine to issue an NTA, separate from a case where USCIS discovers conduct that would then refer it to ICE, that issuance of an NTA, full well knowing that an individual has DACA, is precisely that exercise of prosecutorial discretion that has the effect of terminating DACA. The fact that the SOP doesn't contemplate that and talk about that is not a limiting factor here. What we have, despite and contrary to plaintiff's characterization of the SOP, is it does not curtail the exercise of discretion. So, I mean, it's just curious that we have a whole chapter here about terminating DACA. And if I understand you correctly, USCIS has all kinds of regulations now that govern when it can terminate that, but ICE and CBP don't. Yes, Your Honor, but that is absolutely consistent with the language and intent of the SOP, which have USCIS refer to ICE with regard to or refer to ICE with regard to how it chooses to determine an enforcement priority or otherwise exercise its prosecutorial discretion. The SOP requires that USCIS follow ICE's actions. This is a case where, I'm sorry, yes, that follows that USCIS follow ICE's actions. This is just that case, except it isn't where USCIS is asking ICE. ICE and CBP have acted and USCIS is in a position where they are simply acknowledging that action. What's the BCU DACA team? It's referred to on, this will be on page, on ER 189. It's a procedural step. It's a background check unit that assesses cases for DACA. Okay, and, but they have nothing to do if ICE decides on its own to issue a notice, an NTA? Correct, Your Honor, and that is... Is that part of the SOP? It's an interim step when USCIS is referring a case up the chain, but that SOP doesn't, as I've indicated, Your Honor, talk about when a case is coming the other way. So the SOPs just simply don't, don't address this? Yes, Your Honor, and therefore they don't curtail the discretion of ICE or CBP in how they exercise their prosecutorial discretion. Okay, so if the SOPs don't govern, don't govern here, and the SOPs are what creates DACA, what tells us that it automatically terminates DACA status? You just heard from opposing counsel that there are other things that people can get even though they're still in removal proceedings. They may be able to apply for a Social Security number, okay? The EAD status, I realize is somewhat, is a little bit different, but it's a very, very valuable right for somebody to be able to continue to work even though they're in IJ proceedings, which can take years to put them out of work after they previously had work authorization, puts families in a very, very difficult position. And it seems to have been contemplated here by some of the SOPs, and now you're telling us, well, it doesn't cover some of this, so it just automatically terminates. But I don't know how it automatically terminates since this is what creates the DACA program. In other words, this seems to be a comprehensive scheme governing DACA. I don't know of any regulations that really deal with DACA as DACA. They deal with some with deferred action. But when we, when we have a comprehensive set of guidelines, and now you're telling us it's outside the guidelines, then it just feels totally freeform. It feels like there's, there are no regulations, and so the government gets to do whatever it darn well pleases. And to some extent, that is correct, Your Honor. The DACA SOP, and I disagree with plaintiff's characterization of the scope of that SOP, because it specifically controls the functions of not all individuals involved in DACA. It refers specifically to service center individuals, and that is a specific office and function within USCIS. It just, it just feels like a really, really hollow promise in a very extensive set of non-regulations that sure look like regulations when we can just walk around it in such an easy way. And to address that, and I know I'm over time, and to wrap things up... Yeah, I'd like you to address it. Yes. The reason why that is, is not ultimately a problem is because what is DACA but a form of deferred action and a form of prosecutorial discretion? And so ICE and CBP have the authority... Right, but it does give us, it does give some very important collateral effects to families in the meantime. So if they have DACA status, even though they might be in removal proceedings, there are other important things that might attend that. Yes. Two brief responses. One, it is not DACA that gives individuals the access to those benefits. It is, in fact, the employment authorization that does. And if you're following USCIS's regulations, while it is a harsh result when an individual is placed into removal proceedings, that terminates until they have perhaps another DACA. And I looked at 274A and it refers to 274A.14, which refers to 278.12. And that is deferred action status. So it seems to be an exception to automatically terminating EAD status. And I would disagree with that, Your Honor, because if deferred action status has ended, the individual needs to get another form of deferred action in order to be eligible for employment authorization, again, in removal proceedings. And, Your Honor, ultimately the concern about the harsh result here is one that the courts have addressed, that AADC has addressed  It specifically says, exclusion or deportation proceedings, when exclusion or deportation proceedings are instituted, this shall not preclude the authorization of employment. Pursuant to 274A.12, which has to do with deferred action. I mean, it doesn't seem like it could be any plainer, counsel, that employment authorization can continue even if one is in exclusion or deportation proceedings. Yes, Your Honor. But the government's position is that the placement into removal proceedings ends the deferred action. And so that doesn't prevent an individual from pursuing some other basis. Then the regulation makes no sense. I respectfully disagree, Your Honor. It's, it, it, the regulation is an empty, is an empty promise and irrelevant. Your Honor, the regulation isn't specifically tied to DACA. Individuals in removal proceedings. Right. Because I presume that this precedes DACA. Yes. By many years. Sure. But it says that exclusion or deportation proceedings, when exclusion or deportation proceedings are instituted, it does not preclude the authorization of employment under 274A. Correct. And, and, and refers to 12C such that individuals who are in removal proceedings may request deferred action. Right. And plaintiffs say that individuals in removal proceedings are not barred from requesting DACA and in some cases receiving DACA. And in those cases they can get employment authorization. But we're working, we're not working at this from, from that. So your, so your position is, is that, is that DACA status and EAD status are automatically terminated when the NTA is issued but they are free to reapply for it? Yes. Okay. Seeing that I'm far over time. I appreciate the court's indulgence. All right. Thank you very much, counsel. Thank you both for your excellent arguments. Inland Empire Immigrant Youth Collective versus Nielsen is submitted and this session of the court is adjourned for today. All rise. Thank you.
judges: Wardlaw, Bybee, Owens